STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. AN-
TONIO MANGINO, PLAINTIFF IN ERROR.

Submitted May 29, 1931—Decided October 19, 1931.

(475)

For the plaintiff in error, *Louis G. Hansen* and *Alexander Simpson.*

For the state, *John Drewen,* prosecutor of the pleas, and. *Harlan Besson,* assistant prosecutor.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The plaintiff in error, Antonio· Mangino, was convicted upon an indictment charging him with the murder of his wife, the jury finding him guilty of murder in the second degree, and was sentenced to serve twenty years at hard labor in the state prison. He now seeks· to review the validity of the sentence entered on the verdict.

The plaintiff in error operated a grocery store located in Guttenberg, and he and his wife lived in the rooms over it. They were married in Italy, of which country they were· natives, some forty years prior to her death, which occurred on the 5th of July, 1930, and came to New Jersey in 1904,. where they resided together the rest of her life.

According .to his testimony on the witness-stand, during· the latter part of the night of July 5th, while they were in bed together, he attempted to have sexual intercourse with· his wife, but she refused. Notwithstanding her refusal, he· persisted in his attempt, and finally she drew a revolver from. under her pillow and told him that if he bothered her any more she would kill him. He took the revolver away from. her, and then she took her dresses downstairs to the store, where she put them on. This was the first quarrel they ever· had, they both having lived very happily together until that time. He then dressed and followed her to the store, and they discussed some business matters and she suggested to· him that he should·go out to make some necessary purchases at the market, in New York, where he was accustomed to· purchase his supplies. As he was about to leave the store for that purpose (it was then about five o'clock, A. M.), she· called him back and demanded her revolver. He took it out of his pocket, where he had deposited it after dressing, and put it on the showcase. When he did this, she grabbed it:

and he also grabbed it, saying that she should not have it because if he let her take it she would kill him. While they were struggling the revolver went off and was left in his hand. He put it in his pocket and left the store, without attempting to ascertain whether or not his wife had been injured by its discharge, and went to the New York market and made his purchases. Upon his return to the store, after several hours, he found that his wife was dead from a bullet wound in the head. With the exception of the conditions under which the shooting occurred, his story was contradicted in all its material parts by witnesses produced by the state.

The first ground upon which we are asked to reverse this conviction is that the verdict of the jury was against the weight of the evidence. That the wife's death was caused by a bullet fired from a revolver is conceded. That the shot was fired by the husband was proved by the state and was not denied by him, his contention being that the discharge was accidental and wholly unintentional. Where the fact of killing is first proved, the law presumes it to have been founded on malice until the contrary appears, and all circumstances alleged by way of justification, excuse or alleviation must be proved by the prisoner unless they arise out of the evidence produced against him. This legal principle was first promulgated by our courts in the case of *State* v. *Zellers, 7 N. J. L.* 220, 243, more than one hundred years ago, and its soundness has never been questioned. On the contrary, it has been expressly affirmed by this court in *Brown* v. *State, 62 Id.* 666, 704, and later in *State* v. *Ehlers,* 98 *Id.* 236, 240. Consequently, the question raised by this ground of reversal is whether or not the testimony submitted by the plaintiff in error overcame the presumption of guilt which arose from the killing of his wife. This depended on whether or not the story told by him on the witness-stand was true. By their verdict the jury, by necessary implication, expressed their conclusion that it was not true, and our examination of the proofs in the case satisfies us that they were justified in that conclusion. We find, therefore, that this ground of reversal is without merit.

The second ground for reversal argued before us is that the trial court erred in refusing to direct a verdict of acquittal. What has already been stated disposes of this contention.

The third ground for reversal is directed at an excerpt from the charge to the jury, which is as follows: "I charge you that the shooting of a revolver at the body of the deceased by this defendant was an unlawful act against the peace of this state, likely to be attended by consequence of bloodshed." This statement was made by the court in explaining to the jury the character of murder in the second degree, and is only a part of the instruction upon that point. What the court said with relation to this feature of the case was as follows: "Now, as to murder of the second degree: The law is that any person who in committing any unlawful act against the peace of the state of which the probable consequence may be bloodshed shall kill another shall be guilty of murder; and I charge you now, gentlemen, that the shooting of a revolver at the body of the deceased, by this defendant, was an unlawful act against the peace of this state likely to be attended by the consequence of bloodshed, so that the killing here is presumed to be malicious and is therefore murder, unless and until the defendant produces facts and circumstances from which justification, excuse or extenuation may arise." This instruction, taken as a whole, was not erroneous. As has already been stated, the rule is entirely settled in this state that, the fact of killing being first proved, as was done in this case, the law presumes it to have been founded on malice until the contrary appears, and all circumstances alleged by way of justification, excuse or alleviation must be proved by the prisoner, unless they arise out of the evidence produced against him. The portion of the charge which is the subject of attack, read in connection with what precedes and what follows it, is, in effect, a recital of this legal principle.

The next ground upon which we are asked to reverse the conviction is that the trial court erroneously admitted in evidence an alleged confession of the plaintiff in error, which

was signed by him. This so called confession was a statement made by the plaintiff in error while he was in custody to certain officers in the employ of the prosecutor of the pleas and to an interpreter, who was called upon to translate into Italian the questions asked of him and his replies thereto. The interpreter translated into English the answers to the various questions, and the questions and answers were reduced to writing by a stenographer. The basis of the attack upon the admission of this statement is that it was mere hearsay; that it was not made by the plaintiff in error, but by one of the officers employed by the prosecutor of the pleas. An examination of the testimony relating to this matter satisfies us that this contention is without merit. The proofs show that plaintiff in error could understand English to some extent, but not fully, and asked that an interpreter translate the questions put to him and his answers thereto. His request was granted. The court interpreter was brought in; the questions were put to the plaintiff in error in English and were written down when so put; they were then translated to him in Italian and were answered by him in that language; his answers were then translated into and were written down in English. The interpreter died before the trial was had, and the argument is that he alone could tell whether the answers of plaintiff in error were transcribed as given by him. The proofs, however, showed that after the statement was completed, it was read to him both in Italian and in English, and that after it was read to him in the latter language he was asked if he understood it, and that he "nodded yes," and then signed it. In our opinion, this proof justified the court in finding that the statement was accurately transcribed, and that plaintiff in error understood it when he signed it. This being so, its admission in evidence was proper.

The next ground urged as a reason for reversal relates to the admission in evidence of a subsequent statement made by the plaintiff in error under conditions similar to those existing when the first statement was made, and it is argued that the court erred in admitting it for the same reason

advanced in support of the contention that statement No. 1 should have been excluded. For the reason already indicated, we conclude that the trial court committed no error in admitting this statement also in evidence.

The next ground for reversal is that the trial court erroneously refused to permit counsel for the plaintiff in error to ask the latter's son, who was called as a witness by the state, the following question: "Isn't it a fact, Mangino, you are charged with three different offenses of carnal abuse at the present time?" The purpose of the question, as stated by counsel, was to show the interest of the son in the outcome of the trial. The trial court held that the question had no relevancy to the matters in issue and had no tendency to show any interest on the part of the witness in the outcome of the case, and for these reasons excluded it. In our opinion, the exclusion of the question was proper, and for the reasons stated by the trial court.

The last ground urged for reversing the conviction is that the trial court erroneously admitted in evidence the minutes taken at the coroner's inquest over the death of Mrs. Mangino. It is contended that these minutes were not properly proved, so far as they related to the statement of the plaintiff in error made thereat. The proofs showed that when the plaintiff in error was called as a witness before the coroner he asked for an interpreter, and that a man named Rizzuto was thereupon called to act as such. One McCormick was the stenographer at the inquest who took down the testimony submitted before the coroner, and in the course of his work took down that of the plaintiff in error as translated by Rizzuto. He testified on the trial that the testimony was correctly transcribed, although he had lost his original notes, and Rizzuto testified that the stenographer's transcript correctly recited the testimony given by the plaintiff in error at the inquest. This testimony, in our opinion, justified the admission in evidence of the coroner's minutes, and, consequently, the trial court committed no error in refusing to exclude them.

These are the only matters argued before us, and our con-

clusion is that, for the reasons stated, the judgment under review should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ.   14.

*For reversal*—None.